PER CURIAM.
Defendant-appellant Wolfe seeks review of a conviction of perjury, as charged in an information. The conviction was entered in a jury trial and a one year sentence was thereupon imposed. § 837.02, Fla.Stat., F.S.A. We affirm.
Wolfe testified under oath for the defense in the criminal prosecution of Henry Milander, where the charges made by the information against Milander were conspiracy to commit a felony (grand larceny), and two grand larceny counts. A jury found Milander guilty on all three counts, but adjudication was withheld.
An issue in the Milander trial was whether or not Milander appropriated $7,800.00, in the form of two checks, for the use and benefit of Wolfe. Wolfe testified that none of the money he used for the purchase of certain realty was derived from the City of Hialeah:
[Questions to defendant Wolfe]
“QUESTION: Now, under your contract, how many days after you put up your $1,000.00 were you required to put up the balance of the $6,800.00?
“ANSWER: It was three or four days. That’s it.
“QUESTION: And did you put up the balance of the deposit of $6,800.00 ?
“ANSWER: Yes, sir.
“QUESTION: Now, did you get any of the $6,800.00 from the City of Hialeah?
“ANSWER: None of the $6,800.00 was derived from the City of Hialeah.
“QUESTION: You did get $6,800.00 from the City of Hialeah, and $1,000.00, did you not?
“ANSWER: Yes, sir.
“QUESTION: But you had used your group’s own money before that ?
“ANSWER: Yes sir, the $1,000.00 I received from the City, I put in my trust account, and it is so marked, if you have it there.
“QUESTION: The $1,000.00 you received from the City you put in your trust account?
“ANSWER: Yes, sir.”
*535 Shortly thereafter he further testified that the money given to him was placed in a trust account:
[Questions to Defendant Wolfe]
“QUESTION: Mr. Goodlet, when you were having your conversation with him, do you recall him asking you if you were the actual owner of the property ?
“ANSWER: When I had all of my dealings with him, I said that I represented the owners of the property; and at that time I did. I represented my law partners in the sale of the property, and if the City had not purchased it, we would have syndicated it through other people and had made the purchase of the property, and we would have our money up at any time.
“The City wanted their money, their $7,800.00 and I told them that it was always there and they could have it within a half hour’s notice, and they could have it, and all I would have to do was go back to the office and sign a check and give it to them.
“QUESTION: That $7,800.00, where did you keep it?
“ANSWER: In a trust account.
“QUESTION: Trust account at all times ?
“ANSWER: Yes, sir.
“QUESTION: And when you eventually returned the money to the City, did you give them a draft of that trust account ?
“ANSWER: Yes, sir; $7,800.00.”
The prosecution proved, through two deputy clerks of the Criminal Court of Record, that Wolfe was administered a valid oath. Two court reporters testified to their transcription of the testimony in the Milander trial, including that of Wolfe. The transcript was admitted into evidence.
An assistant city clerk of Hialeah testified as to transactions involving the two checks. The evidence presented by a bank president was that the $6,800.00 check was not deposited in Wolfe’s trust account. Wolfe testified in his own behalf.
The prosecution presented the issue of materiality to the judge. The court, upon resolving that issue itself adverse • to Wolfe, instructed the jury as follows:
“The court instructs you that the element of materiality previously mentioned in this case is a question of law for the court to determine. In this regard, the court instructs you that the questions asked and the answers given by the Defendant before the criminal court of record as to the derivation of the $6,800.00 paid to Phillip Miller, and as to where the $7,800.00 was kept, constitutes material matters in the judicial proceedings described in the information and you must accept that instruction from me as final on that element which means simply that when you retire to deliberate, ladies and gentlemen, you are not to deliberate on the issue of materiality; one of those four elements I defined for you that constitutes perjury.
“This matter has been taken from your consideration. You accept it as having been established that the alleged perjured testimony was material to the judicial proceedings that had already transpired. Do you understand that?”
Also, the Milander information was admitted into evidence, but out of the presence of the jury. The parties indicate that the information charging Milander was not considered by the jury.
For reversal, the appellant has presented four points, the last two of which were argued together: (1) viewed in the light of all of the defendant’s testimony, the statements which form the state’s charge of perjury not perjurous; (2) assuming their falsity, they were not material to the issues in the Milander case; (3) the State did not prove his guilt beyond a reasonable doubt; (4) the court erred in instructing a *536 verdict against the defendant on the issue of materiality.
To begin with, Wolfe argues that he was confused and so made erroneous statements, but these were corrected almost immediately. The record does not demonstrate confusion on Wolfe’s part; rather, the record does contain substantial evidence upon which the jury could find that the two statements at issue were false.
Wolfe has also argued that the court erred in refusing to hold that a sufficient retraction as to both statements was made at the time when Wolfe testified as to these matters in the Milander trial. Compare Brannen v. State, 94 Fla. 656, 114 So. 429, criticized in United States v. Norris (1937), 300 U.S. 564, 575-576, 57 S.Ct. 535, 81 L.Ed. 808, 813-814. The untrue statements were not retracted.
Next, Wolfe has argued that the statements were not material to the Milan-der prosecution. We disagree. Vital issues in the Milander trial were whether Wolfe and Milander negotiated a legitimate transaction or whether city funds were used for the benefit of Wolfe. Viewed in those terms, the testimony of Wolfe was material. The rule is stated in Gordon v. State, Fla.1958, 104 So.2d 524, 531:
“. . . The cases hold that in order for testimony to be material it must have some weight and reference to the determination of an issue which is before the court for judicial determination. It is not essential that the false testimony bear directly on the main issue. It is sufficient if the false testimony is collaterally or corroboratively material to the ultimate material fact to be established. The degree of materiality is not of any important consequence. [Citations omitted]”
The Gordon case, however, reversed the perjury conviction there being appealed.
As to Wolfe’s third and fourth points, we note that Florida has aligned itself with the view of the vast majority of jurisdictions that materiality is a question of law for the judge to determine. Rader v. State, Fla.1951, 52 So.2d 105; “Anno., Materiality of testimony assigned as perjury as question for court or jury,” 62 A.L.R.2d 1027 (1958).
We, in adhering to the rule that materiality is a question of law for the court, have re-examined it in the light of the virtually uniform adherence to another rule refusing to permit a directed verdict of guilty at the close of all the evidence in the trial of a criminal case. See: Ryan v. State, 60 Fla. 25, 53 So.2d 448 and Carr v. State, Fla.App.1962, 136 So.2d 28; but cf. Brooks v. United States, 240 F.2d 905, 906 (5th Cir. 1957), where that court in reversing a conviction for perjury on the grounds of plain error stated:
“. . . But as to the authority of the officer who administered the oaths to appellants, the court instructed the jury as follows:
‘It was incumbent upon the Government to establish beyond a reasonable doubt that Naurbon L. Perry was a person authorized to administer oaths under the laws of the United States in connection with the investigation that he was conducting. I charge you as a matter of law that Naurbon L. Perry was so authorized at the time he administered the oath to these individuals! [Italics by the 5th Circuit]
“Appellants contend that the italicized portion of the charge was plain error. We agree for the all-sufficient reason that it deprived the jury of its function of determining whether or not, under the-evidence and as exclusive judges of the facts and of the credibility of the witness, they believed beyond a reasonable doubt that Perry was an officer authorized to administer oaths in 1955 and thus violated appellants’ constitutional right to a trial by jury as guaranteed by the Sixth Amendment. Heinous as the *537 crime of perjury is under our law, it is entitled to no relaxation of the constitutional guaranty of the citizen in order to punish it.” (Italics added)
In conclusion, we express the view that: (1) there was substantial competent evidence as to each of the elements of perjury, and (2) the court correctly determined that the alleged false statements were material as a matter of law. The conviction and sentence are affirmed.
Affirmed.